## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL CASE NUMBER: |
| v. | : | |
| | : | 3:18-mj-00042-DFM-1 |
| AMBER FOLEY, | : | |
| *Defendant.* | : | February 1, 2018 |

## **REPLY MEMORANDUM**

Amber Foley submits this reply in further support of her motion to modify the conditions of her release. The Court cannot hold – without any particularized findings concerning the constitutionally protected interests at stake – that the Adam Walsh Act, codified at 18 U.S.C. § 3142(c)(v), mandates that Ms. Foley not have any contact with an alleged victim. For the reasons stated herein and in her moving brief, the constitutional inadequacies of this provision are four-fold: it violates (1) an element of liberty protected by Fifth Amendment's guarantee of substantive due process– that is, the First Amendment's guarantee of free association; (2) the Fifth Amendment's guarantee of procedural due process; (3) the Eight Amendment's Excess Bail Clause; and (4) the separation-of-powers doctrine.[1]

---

[1] The Government mistakenly suggests that it "does not believe the defendant is raising a facial challenge to the [Adam Walsh Act] requiring no contact with a victim." ECF No. 18 at 4. Let there be no mistake: as the cases cited in Ms. Foley's motion make clear, we contend the statute is unconstitutional *both* on its face and as applied to Ms. Foley. Moreover, contrary to the government's argument, a facial challenge (based on procedural due process or separation of powers) does not require Ms. Foley to prove that the challenged condition is never appropriate. The issue is whether the *mechanism* for the imposition of the challenged condition – congressionally automatic as opposed to judicially discretionary – is unconstitutional in every case. *See United States v. Karper*, 847 F. Supp.2d 350, 360 (N.D.N.Y. 2011) ("[T]he law is unconstitutional in all of its applications because it universally forfeits an accused's *opportunity to contest* whether such conditions are necessary to ensure his return and to ameliorate any danger to the community."). And with respect to the Substantive Due Process / First Amendment claim, Ms. Foley's burden of proof is lower. She need only prove that a "substantial number" of the statute's applications are unconstitutional. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 n.6 (2008).

**I.      The No Contact Provision of the Adam Walsh Act Violates an Element of Liberty Protected by the Fifth's Amendment's Guarantee of Substantive Due Process – that is, the First Amendment's Guarantee of Free Association.**

The Supreme Court has recognized two distinct forms of constitutionally protected association – "intimate association" and "expressive association." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). The freedom to enter into intimate personal relationships is "well-established." *United States v. Reeves*, 591 F.3d 77, 82 (2d Cir. 2010). The Supreme Court has explained that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* The constitutional right of intimate association "extends to relationships that 'attend the creation and sustenance of a family – marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.'" *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 085, 996 (2d Cir. 1997). Indeed, "the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Ms. Foley's interests in this case are unquestionably of the highest significance.

Intimate and expressive associations both trigger strict scrutiny. The Supreme Court has noted that "[f]amily relationships, by their nature, involve deep attachment and commitment to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspects of one's life." *Id.* at 620. Thus, where there is substantial interference with familial relationships, government interference must survive strict scrutiny, that is, it must be "supported by sufficiently important state interests and [be] closely tailored to effectuate only those interests." *Zablocki v. Redhail*, 434 U.S. 374, 388

2

(1978).[2] *See also United States v. Reeves*, 591 F.3d 77, 82-83 (2d Cir.2010) ("Where a condition of supervised release impairs a protected associational interest, our application of § 3583(d) requirements must reflect the heightened constitutional concerns involved").

"Strict scrutiny is usually the 'death knell' for the challenged regulation." *Corso v. Fischer*, 983 F. Supp.2d 320, 333 (S.D.N.Y. 2013) (quoting *Falwell v. Miller*, 203 F. Supp.2d 624, 631 (W.D. Va. 2002)). "If the state has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973).

"Associational rights could not be more directly affected than they are by the Adam Walsh Amendments: a person accused of certain crimes is categorically prohibited from any contact with a class of individuals." *United States v. Arzberger*, 592 F. Supp.2d 590, 603 (S.D.N.Y. 2008). In this case, the right of association implicated is the right of intimate familial association – "perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel*, 530 U.S. at 65. "[I]ncidental limitations on First Amendment freedoms" can be sustained only if justified by "a sufficiently important governmental interest" which is "unrelated" to the affected first amendment freedom and "no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). Here, the Adam Walsh Act simply mandates no contact between *any* accused and *any* alleged victim, giving no consideration to the significance of the Government's interest in the *particular* case or whether the condition is

---

[2] Even non-familial associations, where they share similar qualities of "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship, are likely to warrant similarly strong constitutional protection." *Roberts*, 468 U.S. at 62. Thus, even regulations affecting unmarried persons who share close romantic ties should be subjected to strict scrutiny. *See Chi Iota of Alpha Epsilon Pi Fraternity v. City University of New York*, 502 F.3d 136, 145 (2d Cir. 2007) ("[T]he [Supreme] Court has declined to restrict the right to intimate association to the family context.").

imposed is warranted to satisfy that *particular* interest.

What is remarkable about this congressional mandate in the pretrial bail context is that the Second Circuit has struck down similar provisions *of supervised release*, which of course are only imposed *after a defendant's guilt has been established beyond a reasonable doubt*.  For instance, in *United States v. McGeoch*, 546 F. App'x 44, 45 (2d Cir. 2013) (summary order), the Second Circuit struck down a supervised release provision prohibiting no contacts with minors because the district court did not "provid[e] [the defendant] with an opportunity to be heard" or "make specific findings to justify such a condition."  *Id*. at 49.  According to the Court, "[a]bsent an individualized inquiry into whether McGeoch's sexual proclivities pose a threat to his sons, . . . the imposition of a harsh condition that either prohibits interaction with his children or makes such interaction subject to supervision approved of by the probation officer violates McGeoch's due process rights."  *Id*.  McGeoch was convicted of violation 18 U.S.C. § 2422(b) by using a facility of interstate commerce to solicit sex with a minor.  In contrast to Ms. Foley, who is presumed innocent, Mr. McGeoch had been convicted of a crime.  If he is entitled to an individualized determination of necessity, surely an accused like Ms. Foley is entitled to the same.[3]

## II. The Adam Walsh Act's No Contact Provision Violates the Fifth Amendment's Guarantee of Procedural Due Process.

Courts "examine procedural due process questions in two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citations

---

[3] It "has not been authoritatively determined" whether the freedom of intimate association derives primarily from the First Amendment or as an element of liberty protected by the Due Process Clause.  *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999) (discussing cases).  What is clear, however, is that individuals may raise overbreadth challenges based on the freedom of intimate association, as the plaintiffs did in *Roberts*, 468 U.S. at 615.

omitted).

Here, the protectable liberty interest at stake "is substantial; defendants are likely to be erroneously deprived of the First Amendment right of association in the absence of an individualized determination of the need for a no-contact order; the marginal burden of providing the additional due process is minimal; and the Government's interest in protecting witnesses, while plainly significant, is not inconsistent with a particularized determination of the danger posed by the defendant." *Arzberger*, 592 F. Supp.2d at 604.  There are no procedures for determining whether a no contact order is necessary – the statute mandates such an order for all defendants, regardless of their individual characteristics or the nuances of the charged crimes.  "Absent any individualized determination, there is simply no way of knowing whether the deprivation of liberty is warranted or wholly erroneous." *United States v. Smedley*, 611 F. Supp. 2d 971, 975 (E.D. Mo. 2009).  "Accordingly, the Adam Walsh Amendments are facially unconstitutional to the extent that they automatically require the imposition of a no-contact condition, and the Government's request that such a condition be required here is denied." *Arzberger*, 592 F. Supp.2d at 604.

### III. The Adam Walsh Act's No Contact Provision Violates the Eight Amendment's Excessive Bail Clause.

The Excessive Bail Clause applies to conditions of release. *See United States v. Salerno*, 481 U.S. 739, 754 (1987) (holding government's "proposed conditions of release or detention" must not be excessive in light of the perceived evil).  To find a violation of the Excessive Bail Clause, the Court must determine that the release conditions are excessive "in light of the perceived evil." *Id*.  Bail, as well as conditions of release, must be "reasonably calculated to fulfill" the government's purpose. *See Galen v. County of Los Angeles*, 477 F.3d 652, 659-60 (9th Cir. 2007) (holding that bail may not be set to achieve invalid interests or in an amount that is excessive in relation to the interests sought to be achieved).

"Here, the conditions necessary to achieve the government's objectives of assuring Defendant's appearance at trial and protecting the safety of the community are less stringent than those required by the Walsh Act." *United States v. Kennedy*, 593 F. Supp.2d 1221, 1227 (W.D. Wash. 2008). Indeed, the Government previously expressed a willingness to allow Ms. Foley to continue to visit with the alleged victim while supervised by DCF. Accordingly, conditioning Ms. Foley's release on the proposed mandatory conditions of the Walsh Act would subject her to excessive bail in violation the Eighth Amendment.

### IV. The Adam Walsh Act's No Contact Provision Violates the Separation-of-Powers Doctrine.

The "concentration of power in the hands of a single branch is a threat to liberty." *Clinton v. City of New York,* 524 U.S. 417, 450 (1998); *see also Kennedy*, 593 F. Supp.2d 1221, 1231 (W.D. Wash. 2008). The separation of powers doctrine is a fundamental principle of ordered liberty that ensures our independent judiciary is not cowed by momentary populist passions.

"Since the Constitution was adopted, the setting of bail in federal criminal cases, with minor exceptions, has been recognized as representing the quintessential exercise of judicial power." *United States v. Crowell*, 2006 WL 3541736, at *11 (W.D.N.Y. Dec. 7, 2006). "While Congress has historically had a hand in shaping the bail process, such as creating a presumption of detention in certain cases, the Walsh Act's mandatory release conditions go much further than that traditional role, and impermissibly intrude upon the judicial function of setting bail in federal criminal cases by requiring conditions that substantially impact liberty interests, and precluding the courts from holding individualized determinations." *Kennedy*, 593 F. Supp.2d at 1232; *accord Crowell*, 2006 WL 3541736, at *11 ("The Adam Walsh Amendments unmistakedly and unduly encroach upon the judicial function, exclusively reserved by Article III of the Constitution to the Judicial Branch, in violation of the separation of powers established by the Constitution's

6

framework.").

To cede the authority to make individualized determinations concerning bail conditions would be to allow the legislative branch to unconstitutionally impinge on the functions of the judiciary. In no area is judicial independence more necessary than the context of federal bail, where those accused of serious crimes *must* be afforded the presumption of innocence and spared substantial infringements on their constitutionally protected liberties, including "perhaps the oldest of . . . fundamental liberty interests" – the right to familial association.

## CONCLUSION

The Adam Walsh Act's no contact provision is clearly unconstitutional on its face and, in particular, as applied to Ms. Foley. The Court must make an individualized determination of whether such a condition is necessary *in this case* and *in every case*, based on the particularized circumstances of the accused and the alleged crime. The Government previously indicated its willingness to agree to supervised DCF visits, an implicit recognition that a no contact order is unnecessary in light of the individualized facts. Accordingly, Ms. Foley asks that the Court disregard the Adam Walsh Act and modify her conditions of release to permit such visits to continue without further interruption.

Respectfully Submitted,

THE DEFENDANT,
Amber Foley

FEDERAL DEFENDER OFFICE

Date: February 01, 2018           /s/ Ross Thomas
                                  Assistant Federal Defender
                                  10 Columbus Blvd, 6th FL
                                  Hartford, CT 06106
                                  Phone: (860) 493-6260
                                  Bar No.: phv08740
                                  Email: ross_thomas@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 01, 2018, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ross Thomas
Ross Thomas