# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 3:18-cr-333 (VLB)** |
| | : | |
| **AMBER FOLEY** | : | |
| **Defendant.** | : | **November 4, 2019** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## PRE-TRIAL ORDERS

Trial in this matter is scheduled to commence with jury selection on November 19, 2019. The Court reviewed the parties' Joint Trial Memorandum ("JTM")[Dkt. 111] and issues the following Orders.

### Defense witness and exhibit lists

Before considering the motions set forth in the JTM, the Court must address the inadequacy of the discussion of the defense's case in the JTM. The defense case does not set forth witnesses that the Defendant intends to call or exhibits that she may introduce. *Id.* at 15. Instead, the Defendant generally reserves the right to call witnesses, offer exhibits, and testify on her own behalf. *Id*

"[T]he Federal Rules of Criminal Procedure do not require disclosure of trial witnesses by a particular date in advance; the timing and manner is left up to the discretion of the Court. *U.S. v. Ulbricht*, No. 14-CR-68 KBF, 2014 WL 7273954, at *1 (S.D.N.Y. Dec. 12, 2014)

Here, Chambers Practices state that: "Counsel shall set forth the name and address of each witness to be called at trial, including a brief summary of the anticipated testimony and the expected duration of the witness's testimony. Counsel shall indicate which witnesses are likely to testify and which witnesses will be called only if the need arises." Chamber Practices (available at http://www.ctd.uscourts.gov/content/vanessa-l-bryant). *See* [Dkt. 105] (directing parties to <u>closely</u> follow Chambers' Practice regarding submission of the JTM) (underlining in original). Chambers Practices also require a list of all exhibits and their description in the JTM: "Generally, exhibits that are not included in the submission will be inadmissible unless all parties agree that they may be admitted or they are offered for impeachment or rebuttal." Chambers Practices.

The Defendant shall supplement the JTM by including any witness list or exhibits, should the Defendant intend to call any witnesses, other than the Defendant, or introduce exhibits, not included in the Government's case in chief. The Defendant's supplemental filing is due no later than November 7, 2019.

1. <u>Partial redaction of exhibits</u>

The Government requests that only redacted versions of images that the Government argues constitute "child pornography," 18 U.S.C. § 2256(8) be displayed to the public gallery at trial. [Dkt. 111 at 16]. The Government proposes that the redacted images will be sanitized to cover the genitalia. *Id.* Unredacted images will be provided to the Court, the jury, witnesses, and the Defendant in

envelopes collected and maintained by the Government. No objection by the Defendant is presented in the JTM. *Id*.

"The public has a right of access to court documents. That right is both recognized by the common law and protected by the first amendment." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). The Sixth Amendment also guarantees a defendant the right to a public trial. U.S. CONST. AMEND. VI. "This right, however, "may give way in certain cases to other rights or interests.... Such circumstances will be rare, ... and the balance of interests must be struck with special care." *Waller v. Georgia*, 467 U.S. 39, 45 (1984) (internal citations omitted). *Waller* sets forth four factors for the Court to consider when consider when restriction public access to a proceeding: (1) the closure must "advance an overriding interest that is likely to be prejudiced"; (2) the closure must be "no broader than necessary to protect that interest"; (3) the trial court must consider "reasonable alternatives to closing the proceeding"; and (4) the trial court must make "findings adequate to support the closure." *Id*. at 48.

*U.S. v. Killingbeck*, 616 Fed. App'x 14, 16 (2d Cir. 2015), the Second Circuit held that, even if "assuming that restricting the display of trial exhibits [showing images of child pornography] to the courtroom audience constitutes a partial "closure" for Sixth Amendment purposes, the government presents substantial reasons for doing so, [namely] limiting the continuing harm to victims of child pornography." Like *Killingbeck*, the procedure is narrowly tailored as the public will not be excluded from the courtroom and can see the witnesses and their testimony. *Id*. "A trivial closure, even if intentional and unjustified, may not rise to

the level of a Sixth Amendment violation." *Id.* (citing *Carson v. Fischer*, 421 F.3d 83, 92 (2d. Cir. 2005). Here, the proposed procedure for displaying exhibits provides even greater access public access to the proceeding than the procedure affirmed in *Killingbeck*.

The Court, therefore, GRANTS the parties' proposed procedure for handling and displaying materials that the Government argues are child pornography.

2. <u>Protection of the identity minor children</u>

The JTM also indicates that the Government anticipates testimony and evidence, which would reveal the name of the children depicted in the alleged child pornography during trial. 18 U.S.C. § 3509(d)(A) provides that "…the court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child."

"While the public interest in access to the full information about witnesses' identities is less significant than the public interest in being present during criminal proceedings, access to this information still implicates the right to participate in informed "discussion of governmental affairs" and is thus also protected by the First Amendment." *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604, (1982) (invalidating rule requiring courts to be automatically closed during testimony of underage sexual assault victims on First Amendment grounds).

The Court finds that disclosure of the children's identities would be likely be 'detrimental," to the children's psychological wellbeing, given their young age the nature of the conduct charged. Referring to the minor female child as "Minor Child 1" or (MC1) and the male child as "Minor Child 2" (MC2) is narrowly tailored to protect the identities of the children and outweighs the minor abridgment of the public's access to this information.

Additionally, the Court agrees that the identity of the minor children may be ascertained by inferences drawn from their familial relationship with the Defendant.

The Court, therefore, GRANTS the parties' motion to use initials or pseudonyms when referring to the minor victims. The Court will seal the transcript of the proceeding upon the parties' identification of those portions of the transcript referencing the familial relationship between the Defendant and the minor children.

3. <u>Motion to sequester witnesses</u>

The Court GRANTS the Government's motion for sequestration of witnesses pursuant to Federal Rule of Evidence 615. The Government seeks an exempt from sequestration for the lead case agent. [Dkt. 111 at 19]. The Defendant opposes the Government's request for an exception to sequestration for the lead case agent, arguing that there is an absent of a showing of need. *Id*.

The Court is not required to exclude a party, or "an officer or employee of a party which is not a natural person designated as its representative by its attorney, or ... a person whose presence is shown by a party to be essential to the presentation of the party's cause." Fed. R. Evid. 615.

"It is within a trial court's discretion to exempt the government's chief investigative agent from sequestration and it is well settled that such an exemption is proper under Rule 615(2), deeming the agent-witness a "representative" of the government." *U.S. v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992) (internal citations omitted). *See also U.S. v. Russell*, No. CRIM. 0309CR266CFD, 2010 WL 717901, at *2 (D. Conn. Feb. 23, 2010) (treating a single case agent as fitting "squarely within the Rule 615 exemption allowing a "representative" for one party to remain in the courtroom during the testimony of other witnesses).

The Government's motion for sequestration is GRANTED. The Defendant's request to also sequester the case agent is DENIED pursuant to Fed. R. Evid. 615(2).

4. <u>Motion to permit the FBI digital forensic examiner to testify as a lay witness.</u>

The Government requests that digital forensic examiner Patrick O'Connell be permitted to testify as a lay witness. [Dkt. 111 at 20-21].[1] The Government proffers that Mr. O'Connell will testify that he examined extracted and examined data from two cellular phones using software or device called "Cellebrite." *Id.* at 20. Mr. O'Connell will identify the data obtained. *Id.*

"A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert'

---

[1] The JTM is inconsistent as to whether Mr. O'Connell is an agent of the Federal Bureau of Investigation or U.S. Homeland Security Investigations, or both. [See Dkt. 111 at 20] referring to "FBI digital forensic examiner"; [Dkt. 111 (Ex. A)(referring to Mr. O'Connell as a Certified Forensic Examiner for HSI). The Government should clarify this in the exhibit binder.

as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise." *U.S. v. Marsh*, 568 F. App'x 15, 17 (2d Cir. 2014) (citing *U.S. v. Rigas*, 490 F. 3d 208, 224 (2d Cir. 2007)). However, Rule 701(c), which prohibits testimony from a lay witness that is "based on scientific, technical, or other specialized knowledge," is intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 Advisory Committee's note to 2000 amend.

The Government's proffer does not suggest that Mr. O'Connell will present testimony as to the reliability or mechanics of Cellebrite. *Id.* Mr. O'Connell may testify as a fact witness regarding the steps he undertook to extract the data and what data was obtained. *See* Fed. R. Evid. 602. Consistent with *Marsh*, Mr. O'Connell may not render an opinion based on the applying specialized knowledge to a particular set of facts, nor present testimony turning on a "technical understanding of programming or internal mechanics of the technology," unless qualified as an expert. *Marsh*, 568 F. App'x at 17.[2]

---

[2] In reaching the conclusion that Mr. O'Connell's proffered testimony is unlikely to hinge on a technical understanding of Cellebrite, the Court considers the experience of other district courts within the Second Circuit. Paraphrased testimony from an evidentiary hearing in *U.S. v. Swinton*, No. 15-CR-6055W, 2016 WL 6162426, at *1 (W.D.N.Y. Oct. 21, 2016) explains the relatively simple steps undertaken by a detective using Cellebrite:

He [the detective] explained that after connecting the phone to be searched to the Cellebrite device, the device would display various prompts. After confirming the make and model of the phone to be searched, the prompt would ask whether the user wanted to extract data from the phone. The user would indicate "yes" by pushing the "ok" button on the device. At that point, the

The Court GRANTS the Government's request to permit Mr. O'Connell to testify as a lay witness. The Defendant may object to trial testimony that calls for an opinion requiring any specialized expertise or offers into technical insight into computer processes beyond responding to basic prompts.

### 5. <u>Motion to permit audio transcript as a demonstrative aid</u>

The Government intends to introduce an audio and visual record of an interview of the Defendant conducted by Special Agent Brendan Lundt. [Dkt. 111 at 21-22]. The Government requests permission to provide the jury with a copy of a transcript of the interview. *Id.*

"It is well-established that a transcript of an audio recording is admissible for limited demonstrative purposes at trial provided that the opposing party has an opportunity to introduce a competing transcript if there is disagreement concerning the content of certain statements." *Kennedy v. Supreme Forest Prod., Inc.*, No. 3:14-CV-01851 (JAM), 2017 WL 2225557, at *3 (D. Conn. May 22, 2017) Whether to permit the jury to review a transcript of an audio recording as a demonstrative aid is within discretion of the trial court. *See U.S. v. Bryant*, 480 F.2d

---

device would allow the user to select particular categories of data to be searched, including "contact list, text messages, photos, call data, both incoming and outgoing calls, ring tones, [and] videos." Once the user pressed the "ok" button in response to the prompt "Do you want to start?," the device would copy the requested categories of data directly onto an attached thumb drive. The device prevented the user from editing or changing any of the downloaded and copied data.

(internal citations of the record omitted)

785, 791 (2d Cir. 1973); *see also U.S.* v. Gay, 85 F. App'x 794, 795 (2d Cir. 2004). "[A]ny conflict between the tapes and the transcripts must be resolved in favor of the former." *In re Audibility of Certain Recorded Conversations*, 691 F. Supp. 588, 592 (D. Conn. 1988).

The Government does not suggest any difficulty in understanding the content of the video interrogation or explain how a transcript would aid the jury in understanding the video of the interrogation. The interview was presumably in English. More critically, transcripts fail to capture body language, demeanor, and other paralinguistic cues that inform jurors' interpretation of testimonial evidence captured by video and audio recordings. This is especially significant in a police interrogation or interview of a criminal defendant.

A transcript is likely to distract jurors from the content of the video. It also adds unnecessary complexity; the accuracy of the transcript must be established, it can be challenged, and an alternative transcript presented. Rather than observing the totality of the content of the video, the jurors would be left cross referencing at least one transcript.

Accordingly, the Government's motion to provide the jury with a transcript of the video recording of the Defendant's interview or interrogation is DENIED.

6. Request for opening statements

The Government requests permission for a short opening statement. [Dkt. 111 at 22]. The Defendant opposes the request because the nature of the evidence is "not complex." The Government's motion is GRANTED.

Local Rule of Criminal Procedure 57(c) states that "the presiding judge shall determine whether or not to allow opening statements." Both parties may proceed with opening statements, not exceeding thirty minutes, as set forth in Chamber Practices.

## Conclusion

The Court ORDERS the Defendant to provide a witness list or exhibit list by November 7, 2015, should the Defendant intend to call witnesses or present exhibits, other than those listed by the Government in the JTM.

The Court GRANTS the joint motion to present partially redacted photographs of alleged child pornography and utilize pseudonyms for the minor victims.

The Court GRANTS the parties' motion to sequester witnesses; Defendant and the Government's lead case exempted.

The Court GRANTS the Government's motion to present Mr. O'Connell as a lay witness. The Defendant may object at trial based on Mr. O'Connell's testimony.

The Court DENIES the Government's motion to present an audio transcript as a demonstrative aid.

The Court GRANTS the Government's motion for an opening statement. Both parties may make opening statements, not exceeding thirty minutes.

The parties' exhibit binders are due by November 5, 2019. Jury selection will take place on November 19, 2019 at 09:30 AM in Courtroom Three, 450 Main St.,

Hartford, Connecticut, before the undersigned. Trial will take place in the same courtroom on November 25th and 26, and December 2nd, 3rd, 9th, and 10th starting at 9:30 A.M. Counsel shall be available in Court at 9:00 each day of trial for matters other than the presentation of evidence which must be addressed outside the presence of the jury.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 4, 2019