## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **No. 18-CR-333 (VLB)** |
| | : | |
| **AMBER FOLEY** | : | |
| **Defendant** | : | **October 22, 2020** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## Memorandum of Decision on Order Denying  Defendant's Second Motion to Dismiss, Dkt. 222

Before the Court is Defendant Amber Foley's second Motion to Dismiss the Indictment with prejudice based on an asserted violation of her speedy trial rights pursuant to the Sixth Amendment to the U.S. Constitution, the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and Fed. R. Crim. P. 48(b)(3). [Dkt. 222]. The Government opposes Defendant's motion. [Dkt. 229 (Gov. Mem. in Opp'n)]. Now, after the determination that the Defendant is competent to stand trial and several months of experience managing judicial business during the pandemic, the Court can conclude that Defendant's trial will proceed in a safe manner imminently, and her speedy trial rights were not violated. Accordingly, the Court DENIES Defendant's second Motion to Dismiss.

## Background

The Court directs the parties to the Court's January 27, 2020 ruling denying Defendant's first motion to dismiss based on her speedy trial rights [Dkt. 161 (Mem.

of Decision)] and the procedural history set forth in Judge Spector's recommended ruling on Defendant's competency to stand trial [Dkt. 231 (Recommended Ruling on Competency)]. While incorporating the same by reference, to assure completeness, the Court will set forth the relevant procedural history again.

On January 18, 2018, Ms. Foley was arrested on a criminal complaint charging her with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). [Dkt. 1 (Crim. Compl.)]. The Court (Martinez, J.) released Ms. Foley on bond on January 19, 2018, and, though due to violations of her conditions of release and homelessness, her conditions of release have changed over time and there have been multiple bond revocation and compliance hearings, she has remained released on conditions since that date. [Dkts. 12, 15].

Defendant filed numerous motions to continue the probable cause hearing to allow for more time for the parties to discuss a possible pre-indictment resolution to this case. See, [Dkts. 30 (03/22/2018), 39 (04/09/2018), 54 (06/06/2018), 63 (08/16/2018), and 72 (09/26/2018)]. In each case, the Court (Martinez, J) found that granting the continuances served the ends of justice.

During this time, the Court (Martinez, J.) granted Ms. Foley's motion [Dkt. 57] to relocate from her residence to the Virginia Wells Transitional House because she could no longer afford to pay her electricity bill. [Dkt. 58 (Order granting Defs. Mot. to Mod. Conds.)].

On December 19, 2018, a grand jury returned an indictment against the Defendant charging her in Count One with production of child pornography, in

violation of 18 U.S.C. § 2251(a) and in Count Two with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). [Dkt. 74 (Indictment)]. The Defendant was arraigned on the indicted charges on January 15, 2019 and entered a not guilty plea. [Dkt. 85]. Jury selection was first set for March 19, 2019. [Dkt. 86 (Scheduling Order)]. Then, the Court granted the Defendant's requested 90-day continuance and the Court made an ends of justice finding based on defense counsel's representation that additional time was needed to prepare, along with the filing of an executed speedy trial waiver. [Dkt. 96]. Jury selection was continued to July 16, 2019. [*Id.*].

Thereafter, the Court granted the Defendant's amended second motion to continue jury selection to November 19, 2019 based on defense counsel's representation that he required additional time to prepare and would be unavailable from June 26, 2019 until July 8, 2019. [Dkt. 103]. Here too, the Defendant executed a speedy trial waiver for the period of July 16, 2019 until November 19, 2019. [Dkt. 102 (Ex. 1)]. In granting the second continuance, the Court made an ends of justice finding, citing to 18 U.S.C. § 3161(h)(7)(B)(iv), and directed the clerk to exclude the period from July 16, 2018 to November 19, 2019 from the Defendant's speedy trial clock. [Dkt. 103].

As discussed in the Court's decision on the Defendant's motion for disqualification, two bond compliance hearings were held before Judge Spector because of reported disruption by Ms. Foley at the Virginia Wells Transitional Home. [Dkts. 117 (10/25/2019) and 118 (10/28/2019)]. During the October 28, 2019 hearing, U.S. Senior Probation Officer Nicole Owens expressed concern about Ms.

Foley's behavior, mental health, and mental health treatment while residing at the halfway house. [10/28/2019 bond violation hearing audio., 15:14:56-15:15:18:20, 15:29:20-15:31:28, 15:32:40-15:33:00]. Magistrate Judge Spector then ordered the U.S. Probation Office to intensify its supervision of Ms. Foley. [Dkt. 119].

The evening before jury selection was set to commence, the Defendant filed a motion to disqualify the Court and to continue jury selection. [Dkt. 128 (Mot. to Disqualify)]; [Dkt. 129 (Third Mot. to Cont. Jury Selection)]. The Court granted the Defendant's third motion to continue jury selection from the bench and the jury was summoned to reappear on November 25, 2019 while the Court considered the Defendant's motion to disqualify. [Dkt. 135 at 0:58]. The Court stated that it would rule on the Defendant's motion for disqualification by November 25, 2019. [*Id.* at 11:21-11:51]. However, before that date, the parties filed additional briefing addressing information provided to the parties by the Court at the November 19, 2019 hearing. [Dkt. 136 (Def. Supp. Mem. in Sup. and Mot. to Dismiss); [Dkt. 137 (Gov. Mem. in Supp.)]. Moreover, the Defendant's supplemental briefing also moved to dismiss the charges pursuant to the Sixth Amendment. [Dkt. 136]. Jury selection then set for November 25, 2019 was marked off during the pendency of the Defendant's motions.

After careful consideration, the Court denied Defendant's motion for disqualification on January 13, 2020 and set jury selection for January 21, 2020. [Dkt. 149]. Thereafter, the parties filed notices with the Court concerning their respective positions on when the trial should commence and Ms. Foley's intent to file a substantive motion. [Dkts. 150, 151]. Based on the Defendant's representation

4

that a motion to dismiss was forthcoming, the Court continued jury selection by one week and then ordered expedited briefing to facilitate the prompt commencement of trial. [Dkts. 152, 156]. The Court denied Defendant's motion to dismiss. [Dkt. 161 (Mem. of Decision)].

Before jury selection was set to commence on January 28, 2020, the Government filed a second motion for another *Frye* hearing to verify that Defendant received their plea offer. [Dkt. 159]. Jury selection was conducted as planned on January 28, 2020, followed by a brief *Frye* hearing held before Judge Richardson. [Dkts. 166, 167].

The day after jury selection, defense counsel moved for a competency evaluation of the Defendant. [Dkt. 175 (Corrected Redacted Mot. for Competency Eval.)]. Attorney Bussert represented that statements Ms. Foley made to him after jury selection, his observation of changes in her affect, and recent changes in her psychotropic medications, led him to the good faith belief that Ms. Foley may be suffering from a mental disorder that affects her ability to assist counsel and to understand the proceedings. [*Id.*].

After hearing from the parties, the Court granted the Defendant's motion for a psychiatric examination on January 30, 2020. [Dkt. 172]. Considering new information presented to the Court in defense counsel's sealed motion and during the telephonic hearing, the Court found that there was reasonable cause to order a competency determination pursuant to 18 U.S.C. § 4241(a). [*Id.*]. The Court directed the parties to propose qualified psychologists and psychiatrist. [*Id.*].

5

As requested by the Defendant, the Court appointed Dr. Madelon Baranoski, a clinical psychologist, and Dr. Howard Zonana, a forensic psychiatrist, to conduct a psychiatric examination on an outpatient basis and file a psychiatric report to aid in the competency determination. [Dkts. 179 and 182]. The psychiatric report was completed and filed under seal on March 19, 2020. [Dkt. 189].

Unfortunately, Defendant's competency evaluation was completed at the emergence of the public health threat posed by COVID-19, particularly when it was acutely effecting Connecticut and New York. On March 10, 2020, Governor Ned Lamont declared a state of emergency and authorized local officials to enact restrictions on gatherings and the authority to impose isolation and quarantine orders, if necessary. Conn. Exec. Order, Declaration of Public Health and Civil Preparedness Emergencies, (Mar. 10, 2020). The impact on the federal court system was immediate. The next day, Chief Judge Underhill issued the District's first COVID-19 General Order, which restricted visitors from the courthouse if they recently traveled to effected countries or quarantined areas. D. Conn. General Order In Re Restriction on Visitors to Courthouses (Mar. 11, 2020). The President of the United States declared a national state of emergency two days later. Proclamation Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, 85 FR 15337.

Under the terms of Section 15002(b)(2) of the CARES Act, Pub. L. No. 116-136 (2020), signed into law shortly after the emergency was declared, the Judicial Conference of the United States found that emergency conditions due to the national emergency declared by the President with respect to COVID-19 materially

6

have affected and will materially affect the functioning of the federal courts, and the Chief Judge of this district has entered an order finding that it is "necessary for the judges in this District to continue to conduct proceedings remotely, by videoconference or telelconference." D. Conn. General Order In Re Court Operation Under Exigent Circumstances Created by COVID-19, CARES Act Authorization, (Mar. 29, 2020).

On March 24, 2020, the parties filed a joint motion for a telephonic competency hearing, which the Court (Bryant, J) denied on March 26, 2020 because the ends of justice require an in-person competency hearing. [Dkt. 192]. Pursuant to the District Court's March 24, 2020 General Order regarding the exigent circumstances created by the COVID-19 public health emergency, the Court scheduled the in-person, competency hearing for May 18, 2020 and indicated that jury selection would go forward on June 16, 2020 if the defendant was found competent. [*Id.*]. Mindful of Ms. Foley's previous motion to disqualify and to avoid the potential for further delay occasioned by the filing of further substantive motions, on April 8, 2020, the Court vacated its order and referred the case to Magistrate Judge Spector to conduct a competency hearing and to issue a recommended ruling pursuant to 18 U.S.C. § 4241(d)) and Fed. R. Crim. P. 59. [Dkt. 198]. Additionally, the Court referred the matter to Judge Spector because he presided over multiple bond compliance hearings and had greater familiarity with Ms. Foley's mental health status and had personally observed her over several months.

On April 30, 2020, the Court (Spector, J) postponed the competency hearing to June 15, 2020 because Chief Judge Underhill's superseding General COVID-19 Order prohibited any in-person criminal proceeding from going forward until after June 15, 2020. [Dkt. 206]. In response, Defendant filed a motion for reconsideration asking the Court to proceed with the competency hearing via audio or videoconferencing technology during the month of May 2020, arguing that the delay frustrated Defendant's speedy trial rights. [Dkt. 205 (Def. Mem. in Supp. of Mot. for Recons.)]. While the Government initially joined the Defendant in requesting a telephonic competency hearing, it later objected to proceeding via videoconferencing technology because neither the CARES Act nor Chief Judge Underhill's authorization order permitted the Court to conduct a competency hearing remotely. [Dkt. 210 (Gov. Opp'n to Def. Mot. for Recons.) at 5-6]. The Government further argued that the nature of a competency hearing required the Court to personally observe the Defendant, especially in this case where defense counsel raised the issue of recent changes in Ms. Foley's behavior and her flat affect during jury selection. [*Id.* at 7-8].

After oral arguments, Judge Spector denied Defendant's motion for reconsideration because the CARES Act did not specifically identify competency hearings as one of the court proceedings that could be conducted by video if the defendant consents and waives the right to be physically present in the courtroom. [Dkt. 214 (05/19/2020 Order)]. Though the Court found that it was not clear that the defendant had a right under Fed. R. Crim. P. 43 to be physically present in a courtroom for a competency hearing, it concluded that it was not comfortable

8

going forward with the hearing by video because the defendant herself did not have access to an electronic device which would allow for her to participate in the hearing by video. [*Id.*]. In addition, the Court postponed the in-person hearing to July 27, 2020 to "allay, to some degree, any concerns that the parties and the witnesses have about coming to the courthouse for" the proceeding. [*Id.*]. Judge Spector subsequently clarified that he intended to conduct the entire hearing fully in a courtroom and did not plan to use video-conferencing for any purpose, including witness testimony. [Dkt. 223 (Order re: Competency hearing)].

Prior to the Defendant's competency hearing on July 27, 2020, the Government moved to set a jury selection date and for Speedy Trial Act findings. [Dkt. 216]. The Court granted the Government's motion and set jury selection for September 15, 2020. As to Defendant's speedy trial clock, the Court found that the time since January 29, 2020 through the determination of the Defendant's competency, which was still pending, was automatically excluded pursuant to 18 U.S.C.§ 3161(h)(1)(A). [*Id.*]. Additionally, the Court found, if Ms. Foley was competent to stand trial, this time would also be excluded from her speedy trial clock pursuant to 18 U.S.C. § 3161(h)(7)(A) because the ends of justice outweighed the best interest of the public and the defendant in a speedy trial because of the public health risks in summoning groups of prospective jurors caused by the COVID-19 pandemic. *See Id.* (citing D. Conn. COVID-19 General Order re: Jury Trials (May 19, 2020) (finding that summoning large groups of jurors who would be required to sit in close proximity to each other during jury selection, trial and deliberations, coupled with the Court's reduced ability to obtain an adequate

spectrum of jurors due to the public's perception of the risk associated with jury service and the effect of the above public health recommendations on the availability of counsel and Court staff to be present in the courtroom warranted continuances under the Speedy Trial Act).

On July 27, 2020, the Court (Spector, J) held the competency hearing. Drs. Baranoski and Zonana both testified. [Dkts. 225 (Witness List)]. In addition, the Court considered the March 18, 2020 psychiatric report and Dr. Zonana's notes from his July 21, 2020 telephonic interview with the defendant. *See* [Dkt. 189 (Sealed Psych. Report)]; [Dkt. 226 (Zonana Sealed Notes)]. Both Dr. Baranoski and Dr. Zonana opined in the March 18, 2020 report and their testimonies that the defendant was competent to stand trial. In post-hearing briefing, the Government agreed with Drs. Baranoski and Zonana and the Defendant took no position. [Dkt. 228 (Gov. Br.)]; [Dkt. 227 (Def. Br.)].

On August 27, 2020, Judge Spector issued his recommended ruling, finding that Ms. Foley had "sufficient present ability to consult with h[er] lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against h[er].'" [Dkt. 231 (Recommended Ruling on Competency) at 4-7](citing 18 U.S.C. § 4241(d) and *United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995) for the applicable standard for competency to stand trial). Judge Spector reasoned that:

> As both Dr. Baranoski and Dr. Zonana explained, the defendant fully understands terms of the proposed plea agreement, the potential penalties she faces if she is convicted after trial, her various trial rights, the evidence against her and her own view of her culpability in this case. She has

consistently articulated rational reasons for proceeding to trial and a rational understanding of the consequences of proceeding to trial, both in terms of the potential penalties and in terms of what she can hope for from a jury's consideration of the evidence.

[*Id.* at 5.].[1]

Within a week of Judge Spector's recommended ruling, the Court entered a final continuance of jury selection to November 10, 2020, pursuant to Chief Judge Underhill's July 14, 2020 General Order, which continued jury selection in criminal cases set to begin before November 2, 2020 based on pandemic related conditions. D. Conn. General Order In Re Court Operation Under Exigent Circumstances Created by COVID-19, Jury Selections and Trial (Jul. 14, 2020). In ordering the final continuance, the Court agreed with the Chief Judge's general order and again found that the ends of justice warranted the continuance pursuant to 18 U.S.C. § 3161(h)(7)(A) based on pandemic-related concerns with proceeding with a criminal jury trial. [Dkt. 234]. The Clerk was ordered to exclude the time between September 15, 2020 and November 1, 2020 from Defendant's speedy trial clock. [*Id.*].

Since setting jury selection for September 2020, the Court has held three status conferences with counsel to address the logistics of safely proceeding with trial. [Dkts. 220 (06/26/2020 (min. entry)), 241 (09/21/2020 (min. entry)), and 244 (10/19/2020 (min entry))]. Both COVID-19 and case specific questionnaires were mailed to 150 potential jurors. Their responses are due shortly.

---

[1] Judge Spector noted that, even under a "decisional competency" standard advocated by the Defendant, which, as he explained, is not the applicable standard, Ms. Foley is competent to stand trial because her decision to reject the plea offer is a reasoned one. [Dkt. 231 (Recommended Ruling) at 6-7].

During the trial hiatus the District has worked diligently to assure the resumption of safe operations.  It has spent many hours investigating and testing the flow, filtration and quality of air circulating in the courtroom, chambers, jury deliberation rooms and other areas of the courthouse to understand and mitigate the risks of airborne coronavirus contagion. The District also retained a virologist to advise on infection mitigation techniques. Consistent with the findings from these investigations, the Court has spent numerous hours designing and overseeing the physical reconfiguration of the courtroom and new jury deliberation room to enhance juror safety and planning the logistics of conducting criminal jury selection and trial, including jury deliberation. This has necessitated the acquisition, installation and testing of electronic equipment and furnishings. This case is the first scheduled jury selection in a criminal case in Hartford since the onset of the pandemic and will be the second criminal trial in the District.

**Discussion**

I.      **Speedy Trial Act**

The Court incorporates its January 27, 2020 decision on Defendant's first motion to dismiss. [Dkt. 161]. In that decision, the Court determined that Defendant had 16 days remaining on her speedy trial clock when jury selection commenced on January 28, 2020.

As addressed in the Court's earlier decision, the Speedy Trial Act excludes time attributable to certain events from computation of the seventy-day statutory period. *See e.g.*, 18 U.S.C. § 3161(h)(1)(A)-(h). For certain events, like the filing of a pre-trial

12

motion, time is automatically excluded from the Speedy Trial clock regardless of whether the Court makes an *a fortiori* specific finding that the delay was reasonably necessary. *See* § 3161(h)(1)(D); *Henderson v. United States*, 476 U.S. 321, 326-31 (1986)(rejecting argument that delays during the pendency of pre-trial motions must be "reasonably necessary").

Of note here, § 3161(h)(1)(A), states that:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--

(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant.

In both *United States v. Matsushita*, 794 F.2d 46, 50 (2d Cir. 1986) and *United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990), the Second Circuit extended the U.S. Supreme Court's reasoning in *Henderson* to automatically exclude the time for competency proceedings pursuant to § 3161(h)(1)(A). *See Matsushita*, 794 F.2d at 51("The rationale of *Henderson*, moreover, is that statutory provisions of the Speedy Trial Act that provide for the exclusion of time embody a reasonableness standard only when Congress has explicitly required that the period of delay be reasonable.").

Here, January 29, 2020 is automatically excluded pursuant to § 3161(h)(1)(D) because defense counsel filed a motion for a competency evaluation, prompting a

hearing on the motion. [Dkts. 168-171]. Since the Court granted the motion, Defendant's speedy trial clock automatically stopped on January 30, 2020 and was tolled through the pendency of proceedings to determine Defendant's competency pursuant to § 3161(h)(1)(A). Although the delay of the competency proceeding was reasonable in light of the public health emergency, the time from January 30, 2020 through September 10, 2020 is automatically excluded from the speedy trial clock pursuant to § 3161(h)(1)(A) without regard to reasonableness. This period accounts for an additional fourteen days for the Government to consider objecting to the recommended ruling and for the Court to review the recommended ruling. *See* 28 U.S.C. § 636(b)(1).

Additionally and alternatively, the filing of Defendant's motion to dismiss on July 14, 2020 [Dkt. 222] tolled the speedy trial clock through the completion of briefing on August 6, 2020 [Dkt. 230] pursuant to § 3161(h)(1)(D). Thereafter, the next thirty days while this motion was under advisement by the Court was also automatically excluded pursuant to § 3161(h)(1)(H). Apart from the exclusion of time for her competency proceedings and as a consequence of the Court's ends of justice findings relative to the pandemic, Ms. Foley's speedy trial clock was additionally and alternatively tolled from July 14, 2020 through September 6, 2020. Additional time was automatically excluded between September 17 and September 20, 2020 because of the pendency of the Government's scheduling motions. [Dkts. 238-240].

Although the Defendant's motion was filed during the pendency of the competency proceedings, it includes no computational analysis of the total time

elapsed and makes no reference to the automatic exclusion of time for the competency proceedings defense counsel initiated pursuant to § 3161(h)(1)(A) or the exclusion of time necessary for the consideration of this, Ms. Foley's most recent, substantive motion.  Ms. Foley could not have been tried between January 30, 2020 and September 10, 2020 without violating her due process right as her competency to stand trial was in question. *Pate v. Robinson*, 383 U.S. 375, 386 (1966). Defense counsel, in good faith, placed Ms. Foley's competency into question through the submission of additional information in his sealed motion. The Court accommodated Ms. Foley by appointing the qualified psychiatric and psychological evaluators that she proposed and ordering that the competency evaluation take place in a less-intrusive outpatient setting, rather than an in-patient setting as the Government proposed. The issue is thus limited to the pandemic-related delay from September 10, 2020 through the earliest date that Ms. Foley's trial could safely recommence: November 1, 2020.

Defendant challenges Chief Judge Underhill's General Order, which continued jury selections set to begin on or before November 2, 2020. Defendant argues that "there is no basis to continue to deny criminal defendants their right to a speedy trial." [Dkt. 222 at 4]. In support of this assertion, Defendant cites Connecticut's COVID-19 positivity statistics from July and predictions contained in news sources about a likely increase in COVID-19 cases during the fall. Based on these sources, Defendant argues that the delay in her trial was "judicially created" and, therefore, the indictment should be dismissed with prejudice. Defendant fails to cite any authoritative source suggesting, much less opining, it

was safe to proceed with jury trials prior to the current scheduled jury selection date.

In opposition, the Government argues that Defendant's perception about the control of the virus is in tension with public health guidance and conflicting news reports. [Dkt. 229 (Gov. Mem. in Opp'n) at 5-7]. The Government argues that the Court's concern over public safety is particularly apt in this case because the trial involves witnesses who must travel, which poses the risk of infecting members of the jury and trial participants while they are together for approximately five days. [*Id.* at 7-8].

Defendant's reply brief argues that the Chief Judge's July 14, 2020 General Order, upon which this Court relied in making case specific speedy trial findings, did not cite any statistics or data in reaching its conclusion. [Dkt. 230 (Def. Repl. Br.) at 2]. Additionally, the Defendant argues that, since the grand jury has reconvened and civil trials could commence, there is no reason to forestall criminal trials, where defendants enjoy a constitutional right to a speedy trial. [*Id.* at 2]. Defendant argues that the Court previously identified protective measures that could reduce participants' risk, such as the use of juror questionnaires to reduce the in-person venire panel size. [*Id.* at 3]. Defendant refutes an anecdotal example the Government provided, which the Court agrees has little persuasive value. Finally, Defendant argues that the indictment should be dismissed with prejudice because Ms. Foley's trial will not be among the first when trials resume because she is not in custody. [*Id.* at 7].

16

First, both the Government and Defendant cite anecdotal examples, conjecture, and news reports for their respective positions on the status of the virus. The public health threat posed by COVID-19 is not an academic consideration for the Court and the examples the parties cite do little justice to the gravity of the issue. The continued spread of the virus illustrates this point. The Government's opposition brief, filed a little over two months ago, cites a CDC statistic that 156,000 Americans had died. [Dkt. 229 at 7]. The coronavirus has continued to infect and kill during the trial hiatus. The CDC now reports nearly 220,000 deaths from COVID-19 and nearly 8.2 million total infections. *CDC COVID Data Tracker*, Ctrs. for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last updated Oct. 20, 2020 at 12:17 P.M.). In the macabre realm of mortality statistics, in New York City, one in every 353 residents died from the virus. *Covid in the U.S.: Latest Map and Case Count*, New York Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (Oct. 20, 2020).

The Connecticut Department of Public Health has reported a total of 64,871 COVID-19 cases, so with a population of approximately 3.565 million people, about 1.8% of the state's population is or has been known to be infected by coronavirus. Conn. Dep't. of Pub. Health, *Coronavirus Disease 2019 (COVID-19)*, https://portal.ct.gov/coronavirus (last reviewed on 10/22/2020); Conn. Dep't. Pub. Health, *Annual Town and County Population for Connecticut-2018*, https://portal.ct.gov/DPH/Health-Information-Systems--

Reporting/Population/Annual-Town-and-County-Population-for-Connecticut).

Over 4,500 Connecticut residents have died. *Id.* That means about 7% of Connecticut residents who were known to be infected from the virus died as a result.

The virus is not evenly distributed among communities within the state and some cities are now subject to public health alerts. *Id.* Because members of the jury are drawn from across the District, jury service risks spreading the virus between communities. Yet, after several months, the Court must find a careful balance between protecting the rights of criminal defendants to a fair and speedy trial while still ensuring the safety of the trial participants. The importance of finding this balance cannot be understated.

The virus primarily spreads through exposure to infected respiratory droplets to persons in close proximity to an infected subject. *Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html (updated Oct. 5, 2020). But the CDC has also recognized that the virus may spread via airborne transmission and through contact with infected surfaces. Specifically, the CDC recommends "..interventions, which include social distancing, use of masks in the community, hand hygiene, and surface cleaning and disinfection, ventilation and avoidance of crowded indoor spaces are especially relevant for enclosed spaces, where circumstances can increase the concentration of suspended small droplets and particles carrying infectious virus." *Id.* (emphasis in original).

Since the pandemic began, the Court has undertaken significant measures to enable social distancing within the courtroom and to mitigate against these three avenues of potential transmission. As counsel is aware, courtrooms are ill-suited for social distancing, which has proven to be the primary means of effectively controlling the spread of the virus. Virtually every moment in trial, from the venire panel entering the courthouse through the announcement of the verdict, requires physical proximity and interaction between individuals. To achieve proper social distancing, the Court needed additional time to identify a courtroom with enough space and airflow, which required consultation with a virologist. Additionally, the Court needed to obtain plexiglass and a HEPA filter for the testifying witness. Then, the courtroom and jury deliberation room needed to be physically reconfigured, electronically rewired and reequipped to permit members of the jury and court participants to effectively distance themselves while allowing for the presentation of evidence and witness testimony with a reasonable measure of safety. This entails an individualized assessment, analysis, reconfiguration and reequipping of each courtroom, and other court space.

The demands of a criminal jury trial, with twelve jurors plus one alternate, required such an extraordinary undertaking. Unlike a petit jury in a criminal trial, the court can proceed with only six jurors in a civil case. Fed. R. Civ. P. 48. Moreover, the nature of civil disputes, including a smaller number of jurors and peremptory challenges and more benign issues, means that the court needs to draw a much smaller venire panel. Aside from the smaller venire panel and smaller petit jury, scheduling a select few civil cases to proceed before criminal trials

allows the judges of the District to test the reconfiguration and logistical changes implemented to maximize trial participant and public safety and sort out any kinks that may arise without jeopardizing a defendant's right to a fair trial when their liberty is at stake.

Similarly, the Hartford seat of court has not selected a new grand jury since the pandemic began. Grand jury service is routinized, longitudinal, and may be held with as few as sixteen grand jurors. Fed. R. Crim. P. 9(a)(1). Since attendance at the grand jury proceeding is strictly proscribed by the Federal Rules of Criminal Procedure, fewer individuals are in the courtroom. Fed. R. Crim. P. 9(d)(1). Grand jury proceedings are shorter in duration and more flexible procedurally. Even so, to achieve the requisite social distancing the grand jury proceedings in the Hartford seat of court has required the use of all three courtrooms in the Annex.

By comparison, jury selection in this case will require a minimum of bringing roughly forty potential jurors from across the District, plus the parties and court staff, to the courthouse for jury selection. Once evidence begins there will be at least twenty four people in the courtroom each day: (Judge, court reporter, courtroom deputy, law clerk, court security officer, the Defendant, defense counsel, two attorneys for the Government, the case agent, the testifying witness (several will be called, including two from out of state), twelve jurors, and one alternate). The entire floor of the courthouse must be set aside for trial. The redesign of one courtroom in the Hartford seat of court was completed this week and a civil test trial will commence days before Ms. Foley's trial.

Contrary to Defendant's assumption, proceeding with trial in this matter is a priority for the Court and this is the first criminal case proceeding at the Hartford seat of court and the second criminal case in the District. The seven-week continuance of Ms. Foley's planned trial is not the result of judicial backlog or neglect of the Court's docket, but was rather necessitated by the extraordinary circumstances caused by the pandemic, particularly, the need for the Court to safely plan the recommencement of criminal jury trials.

The Court made two speedy trial findings related to the pandemic. [Dkts. 217 and 234]. In both instances, the Court considered the relevant factors particular to this case before granting the continuance and set forth its reasoning on the record. *Zedner v. United States*, 547 U.S. 489, 506–07 (2006). The Speedy Trial Act's ends-of-justice provision, "counteract[s] substantive open endedness with procedural strictness," "demand[ing] on-the-record findings" in a continued case. *Id.* at 500. "[W]ithout on-the-record findings, there can be no exclusion under" § 3161(h)(7)(A). *Id.* at 507. Here, separately and alternatively from the automatic exclusion of time during the pendency of Defendant's competency proceeding, the two ends of justice findings excluded the time between May 19, 2020 through November 1, 2020 based on the Court's agreement with the Chief Judge's General Orders continuing jury selection in criminal cases.

Thus, when jury selection commences on November 10th, the Defendant's speedy trial clock will have five days remaining. Consequently, the Court denies Defendant's motion to dismiss based on an asserted violation of the Speedy Trial Act.

II.   <u>Sixth Amendment Right to a Speedy Trial</u>

The constitutional requirements of the Sixth Amendment remain a basis to attack pretrial delay, even if a Defendant's statutory rights under the Speedy Trial Act were not violated. 18 U.S.C § 3173. The Court's view of the merits of Defendant's constitutional claim that her Sixth Amendment rights were violated remains unchanged since the Court's January 27, 2020 ruling. [Dkt. 161 (Mem. of Decision on Def. Mot. to Dismiss) at 12-16].

a.   <u>Length of Delay</u>

Since the Court's decision on Ms. Foley's first motion to dismiss and the currently scheduled jury selection, ten additional months will have passed. The length of delay itself does not warrant dismissal, but instead is presumptively prejudicial and requires the Court to weigh additional factors under *Barker v. Wingo*, 407 U.S. 514 (1972).

b.   <u>Reasons for the delay</u>

First, deliberate delay orchestrated by the government weighs most heavily against the government. *Id.* at 531. Next is neutral delay resulting from negligence or crowded dockets, which nevertheless weighs in favor the defendant. *Ibid.* The last category, valid delay, is a justification and cannot violate a defendant's speedy trial rights. *Ibid.* Delay attributable to the defendant rarely results in a violation of speedy trial rights. *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015). Here, all of the pre-indictment delay and the first ten months of post-indictment delay resulted from the Defendant's motions to continue. [Dkt. 161 at 14-16].

The delay caused by Defendant's competency proceedings from January 2020 through September 2020 is valid and necessary. *United States v. Nyeneko*r, 784 F. App'x 810, 814 (2d Cir. 2019), *cert. denied*, No. 19-8629, 2020 WL 5882829 (Oct. 5, 2020). In at least two instances, the Second Circuit has found that defendants' constitutional speedy trial rights were not violated during the pendency of a competency determination, even where the Government was responsible for some of the delay. *Nyeneko*r, 784 F. App'x at 814 (Government caused four months of unnecessary delay by failing to serve the Bureau of Prisons and the U.S. Marshals Service with the district court's order transferring defendant for treatment); *Vasquez*, 918 F.2d at 333, 33 (2d Cir. 1990)(eight month delay because of "serious institutional error" in competency evaluation did not violate statutory or constitutional speedy trial rights). Compared to *Nyenekor* and *Vasquez*, the competency evaluation and hearing proceeded in a timely and orderly manner.

As was the case with Defendant's first motion to dismiss, the Defendant does not argue that the Government is responsible for any delay. The two month delay that would extend Ms. Foley's trial date past her competency determination was caused by the Court's need to prepare for jury selection and trial amidst the pandemic that continues to kill thousands of Americans. This is not simply "adjust[ing]the court's day-to-day procedures" or a duty that the Court takes lightly. [Dkt. 222 (Def. Mem. in Supp.) at 4](citing *United States v. Moss*, 217 F.3d 426, 432 (6th Cir.2000)). The reasons for the delay strongly militate against finding that Defendant's Sixth Amendment right to a speedy trial was abridged.

c. <u>Assertion of Defendant's Speedy Trial Right</u>

Since the Court's ruling denying Defendant's motion for disqualification, she has frequently and vigorously asserted her right to a speedy trial over the last year. As a result, the Court has prioritized trial in this matter, which is scheduled to begin imminently. This is the only *Barker* factor that weighs in Defendant's favor.

### d. Prejudice

As *Barker* recognizes, excessive pretrial delay can inflict three kinds of cognizable prejudice: (i) "oppressive pretrial incarceration," (ii) "anxiety and concern of the accused," and (iii) "the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Apart from a generalized claim that Defendant experiences anxiety and concern as a result of the pending criminal charges, the Defendant argues in a footnote that Ms. Foley will not receive credit for the time she has resided at the Virginia Wells Transitional House because she was not ordered detained there. [Dkt. 222 at 3, n.1](citing *Reno v. Koray*, 515 U.S. 50 (1995)). The Court is not persuaded that Ms. Foley is prejudiced by her placement at the halfway house. Ms. Foley was not detained by the Court. Although the facility serves as a residence for female state offenders upon their release from prison, Ms. Foley requested to be placed there on a pre-trial basis as an accommodation to her indigency. Ms. Foley has not articulated any basis as to how she would be prejudiced by the delay at trial. Finally, Ms. Foley does not contend that her ability to present evidence in her defense was impaired by the delay.

Consequently, while Ms. Foley has asserted her speedy trial right, the remaining Baker factors weigh in favor of finding that Ms. Foley's speedy trial rights were not violated. Ms. Foley's Sixth Amendment claim fails.

## Conclusion

For the above-mentioned reasons, the Court DENIES Defendant's Second Motion to Dismiss the Indictment. The Court incorporates this Memorandum of Decision as further articulation of the Court's ends of justice findings granting the continuances until November 10, 2020 and excluding time on Defendant's speedy trial clock until November 1, 2020. [Dkts. 217 and 234].

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: October 22, 2020