**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| **v.** | :   **3:18CR333(VLB)** |
| | : |
| **AMBER FOLEY** | : |
| | :   **NOVEMBER 10, 2020** |

**GOVERNMENT'S MOTION TO CONTINUE JURY SELECTION AND FOR SPEEDY**
**TRIAL ACT FINDINGS OF EXCLUDABLE DELAY**

The United States, by and through its attorneys, hereby respectfully submits this motion seeking to continue the jury trial in the above-captioned case.  Jury selection was scheduled to take place today but was abruptly halted before any jurors were questioned due to the closure of the Hartford federal courthouse after a court security officer ("CSO") tested positive for the coronavirus.  The trial is currently scheduled to begin evidence on November 16, 2020.   The defendant is not incarcerated.

Even before the pandemic, this case presented unusual challenges in empaneling a jury.  In particular, the nature of the offenses charged (distribution and production of child pornography) and the relationship of the defendant to the minor victims required an extra-large venire panel.   This challenge is exacerbated due to the existing national health crisis, including the recent spike in coronavirus cases in Connecticut, which makes it challenging to bring large venire panels to the courthouse without risking the health and safety of the court staff, attorneys and the defendant.

The Government respectfully submits that a delay is necessary because, despite the Court's best efforts, there is almost no likelihood that a jury could be empaneled from the 200 jurors summoned.  On balance, the risks to the public in re-convening jury selection are too great where there is little likelihood of successfully finding 31 jurors who represent a fair cross section of the community.

Instead, the jury trial start date of November 16, 2020 should be continued while the Court summons a new venire panel, with ample time to allow the jury questionnaires to be completed and mailed to the courthouse before requiring those jurors to be physically present in the courthouse.  Importantly, the defendant has not and cannot identify any prejudice she will suffer if the Court delays trial in order to summon a new panel.

Therefore, the Government requests the Court to continue the jury trial currently scheduled to begin evidence on November 16, 2020 to a date that fits the Court's schedule, taking into consideration the time needed to summon a new panel and provide them time to complete and return jury questionnaires.

Counsel for the defendant opposes this request for a continuance.

**BACKGROUND**

The procedural background of this case is well documented, including the significant recitation of the procedural history set forth in the Court's Order Denying Defendant's Second Motion to Dismiss [Docket No. 248] (the "Order").

In the Order, the Court set forth various detailed findings relative to the defendant's speedy trial clock and the procedural history of the case.  Perhaps

more to the point, the Court made particularized findings related to the effect of the pandemic on its ability to conduct a criminal jury trial.  The Court noted that "[c]ontrary to the Defendant's assumption, proceeding with trial in this matter is a priority of the Court and this is the first criminal case proceeding at the Hartford seat of court . . . The seven-week continuance of Ms. Foley's planned trial is not the result of judicial backlog or neglect of the Court's docket, but was rather necessitated by the extraordinary circumstances caused by the pandemic . . . particularly the need for the Court to safely plan the recommencement of criminal jury trials." *Id.* at 21.

Indeed, as set forth above, there can be no question that this Court has worked doggedly to conduct the defendant's trial in a time when pandemic-related barriers seem to present at every turn.  The Court has adjusted, changed course, and remained flexible in its mission to ensure that the defendant not only receives a speedy trial, but that, in fact, she would be one of the first in the district to do so.  To everyone's disappointment, despite best efforts at safety and accommodation, the state of the pandemic in this District is such that a jury cannot be safely seated at this time and, accordingly, this trial cannot proceed on the current schedule.   Thus, a continuance of jury selection, considering the specific facts and circumstances of this case, does not violate the defendant's Sixth Amendment right to a speedy trial.

Moreover, despite the pandemic and the Court's limitations on in-person proceedings, a review of the procedural history shows that Ms. Foley's case has not been stagnant.  Over the summer, United States Magistrate Judge Robert M.

3

Spector was able to conduct an in-person competency hearing and issue a recommended ruling finding Ms. Foley competent to plead guilty. This ruling, issued on August 27, 2020 [Docket No 231], cleared the path for the Court to schedule Ms. Foley's trial as soon as Chief Judge Underhill authorized the resumption of trials (and after completion of the significant updates to the courtroom to reduce the safety issues presented by the pandemic).

This Court scheduled Ms. Foley's trial to be the first jury selection in Hartford, and the first criminal jury trial in Connecticut. The Court worked diligently to make the jury selection process as safe as possible. Recognizing that child exploitation offenses often require a larger venire panel from which to select a fair and impartial jury; and recognizing that the pandemic might add to that challenge, the Court scheduled a telephonic conference on September 21, 2020 to discuss how jury selection would take place. Docket No. 241. During that call, the Court requested the parties to propose juror questionnaires that could be sent to a venire panel. On September 28, 2020, the parties submitted a proposed juror questionnaire to the Court. Upon information and belief, on October 8, 2020, the jury clerk sent the juror questionnaire and the Court's COVID-19 questionnaire (collectively, the "Questionnaire") to 150 venire panelists, with the instruction that they be returned to the Court postmarked on or before October 22, 2020.

On October 26, 2020, the Court began docketing the completed Questionnaires. Docket Nos. 250, 251, 252, 253. On October 28, 2020, the parties filed their first joint notice identifying those jurors to be challenged for

cause.  Docket No. 255.  On October 29, 2020, the Court held jury selection by questionnaire, and it became clear that, at that time, there were insufficient responses to empanel a jury.   Docket No. 256.

The Court attempted to address this problem by inquiring as to whether any of the other judges in the Hartford courthouse had a venire available to add to our jury pool.  Finding none available, the Court made efforts to increase the response rate to the jury pool by recording a message for the venire panel.  The recording encouraged venire panelists to return their Questionnaires and extended the deadline to Monday, November 2, 2020.  Docket No. 259.

 On November 3, 2020, the parties filed a second joint notice identifying additional challenges for cause.  Docket No. 262.  On November 4, 2020, during a pretrial hearing, the Court explained that, after considering the challenges for cause, there were insufficient responses to empanel a jury.  Specifically, the Court noted that at least 31 jurors are needed for each party to fully exercise their peremptory challenges.[1]   At the conclusion of the hearing, the defendant indicated that she intended to file another motion to dismiss due to perceived speedy trial violations.

On November 4, 2020, the Court ordered a pretrial hearing for November 5, 2020.   Docket No. 266. The parties jointly requested the pretrial hearing be rescheduled for November 6, 2020.  Docket No. 270. On November 5, 2020, the Court granted the motion to continue, but canceled the pretrial hearing and,

---

[1] This is the minimum number, reflecting the following:  12 jurors, +1 alternate, +11 peremptory challenges for the defendant and +7 peremptory challenges for the Government.  In fact, the parties requested the Court to allow additional alternates due to the gap in time from jury selection and the start of evidence.

instead opted to make another effort to try to save the venire panel by ordering the jury clerk to issue 50 more summonses for jury selection on November 10, 2020.  Docket No. 272.

On November 6, 2020, the parties filed a joint notice listing the juror numbers of the potential jurors who were not yet excused for cause.  Docket No. 273.  There were only 19 jurors on the list.[2]   In addition, the parties noted that they wanted to have the opportunity to inquire further of the entire panel during the jury selection process on November 10, 2020 and that additional challenges for cause may develop during that time.  *Id.*

On November 9, 2020, the Court excused one of the nineteen jurors due to her diagnosis (and her spouse's diagnosis) of COVID-19.  Docket No. 280.

Today, November 10, 2020, the parties were present in the courtroom to begin jury selection.  It was anticipated that, at most, the venire panel would include the 18 jurors who had not yet been excused for cause based on their responses to the Questionnaire and up to 50 additional jurors who were summoned on November 5, 2020 and were instructed to bring their completed Questionnaires to the courtroom.  Upon information and belief, the Court summoned the jurors to appear during three different time periods to maximize safety and social distancing.

Prior to the hearing, the parties were provided a jury list indicating that only nine members of the venire panel were present for jury selection[3].   Prior to the start of jury selection, the Court learned that a CSO who had been on many

---

[2] It bears noting that this group of 19 included one juror who the Government intended to challenge for cause; one juror who the defendant intended to challenge for cause and a third who the Government previously had challenged for cause the Court had deferred it's ruling.

[3] The parties do not know how many jurors were summoned to be present for this first timeframe, but assuming the Court separated the 68 jurors into 3 fairly even groups, it was likely expected to be 20 to 23 jurors.

floors and in numerous rooms in the Hartford courthouse the day prior, tested positive for the coronavirus.[4]  Following their safety protocols, the courthouse was ordered to close to allow a full cleaning.

Upon learning this information, the Court explained that jury selection could not go forward due to the safety issues.  Prior to adjournment, the Government requested guidance regarding its two out-of-state witnesses, specifically whether they could advise them to postpone their travel.  The Court indicated that its schedule is very difficult to fit in another jury selection before November 16, 2020, but the Court might be able to cancel all court hearings on Thursday to accommodate another jury selection hearing.  The Government then moved to continue the trial and requested the opportunity to file a written motion.

After jury selection, the Government learned that the jury clerk uploaded three juror responses that appear to be from jurors who were among the 50 recently summoned.  One of the responses was from an individual who received the summons and, rather than fill out the Questionnaire, outlined her COVID-19 risks and indicated that a doctor's note would be forthcoming.  Docket No. 281. The other two jurors completed the Questionnaire and were among the 9 who were in the courthouse for jury selection.  See Docket No. 285 and 285-1 (expressing significant concerns about COVID-19 risks as well as impartiality concerns due to the charged offense).;

Trial is currently set to begin on November 16, 2020.  At trial, the Government will call approximately ten (10) witnesses, including one who is

---

[4] At the time of this Motion, the Government is not certain that the courthouse will be open on Thursday.  The positive test of a CSO very likely means that additional CSOs and Federal Protection Service guards who staff the Court's entrance and exists will be quarantined for 14 days under CDC Guidelines and presents an additional challenge to bringing members of the public in and out of the courthouse in a safe and efficient manner.

traveling from Georgia and one who will travel from Pennsylvania.  In addition, at least two of the witnesses are first responders (Hartford and Meriden police officers).  The trial will likely require 3 to 4 days of trial testimony from government witnesses.

**DISCUSSION**

**I.    LEGAL STANDARD**

The Speedy Trial Act requires a trial to begin within 70 days of indictment or initial appearance, whichever occurs later, 18 U.S.C. § 3161(c)(1), and entitles the defendant to dismissal of the charges (with or without prejudice) if that deadline is not met, *id.* § 3162(a)(2).  Certain periods of time, however, are excluded from this 70-day clock.  *Id.* § 3161(h).  Some periods of time are automatically excluded, including periods of delay resulting from the absence or unavailability of the defendant or an essential witness, *id.* § 3161(h)(3)(A), and other periods of time are excluded only when a judge continues a trial and finds, on the record, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A).

The Supreme Court has emphasized that the Speedy Trial Act's ends-of-justice provision, *id.* § 3161(h)(7)(A), "counteract[s] substantive open-endedness with procedural strictness," "demand[in] on-the-record findings" in a continued case.  *Zedner v. United States*, 547 U.S. 489, 500 (2006).  "[W]ithout on-the-record findings, there can be no exclusion under" § 3161(h)(7)(A).  *Id.* at 507.  Similarly, the Speedy Trial Act requires that, in granting an ends-of-justice continuance, "the court sets forth, in the record of the case, either orally or in writing, its

reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.*

The Sixth Amendment guarantees criminal defendants the right to a speedy trial. USCS Const. Amend. 6.  This right attaches upon a defendant's arrest or formal accusation. *See U.S. v. Marion,* 404 U.S. 307 (1971). The Speedy Trial Act gives parameters to this right by requiring that a defendant's trial be commenced within seventy days from: (a) the filing of an information or indictment, or (b) the appearance of the defendant before a judicial officer of the court in which the charge is pending, whichever date occurs last. 18 U.S.C. § 3161(c)(1).

It is well-settled that trial courts have broad discretion in resolving continuance motions. *See Morris v. Slappy,* 461 U.S. 1, 11–12 (1983); In considering motions to continue, courts should evaluate whether "the failure to grant such a continuance in the proceeding would be likely to … result in a miscarriage of justice," the case is especially "unusual or … complex, due to the number of defendants [or] the nature of the prosecution," or "the failure to grant such a continuance … would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B).

Title 18 U.S.C. § 3161(h)(7)(A) authorizes this Court to toll time for a continuance in this matter if the Court finds that in doing so, "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Here, a continuance serves the ends of justice and

will not result in an unreasonable delay of the proceedings under 18 U.S.C. §
3161(a)(7).

### A.   The Time Should Be Excluded Under 18 U.S.C. § 3161(h)(7) Because The Court Does Not Have Sufficient Qualified Jurors Available

Here, the time between November 10, 2020 and the next reasonably
available date for the Court to start trial should be excluded from the Speedy Trial
Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A), based on the
specific circumstances of this case.   In setting the trial date, the Government
requests that such date accommodate time for an even larger venire panel to be
summoned and time for that panel to receive and return juror questionnaires.[5]

Today marks the first motion by the Government seeking a continuance of
the trial in this case.  This motion is made with great reluctance, but out of
necessity and concern for public safety.

 Despite the substantial efforts by this Court, including (1) allowing Ms.
Foley's trial to take priority over other defendants, including those who are
incarcerated; (2) summoning more than 150 venire-panelists (well more than a
standard jury pool); (3) mailing the Questionnaire to try to identify those jurors
who can be challenged for cause and limit the number of jurors who would need
to be present in the courtroom; (4) attempting to find additional venire panelist
when the juror response rate was significantly lower than anticipated; (5)
recording a telephonic notice to the venire urging them to complete the juror

---

[5] The Government requests the Court set a specific date.  The Second Circuit has held that
an "ends of justice" continuance must be "specifically limited in time." *United States v.
Gambino*, 59 F.3d 353, 258 (2d Cir.1995).

questionnaire and giving them extra time to do so; and (6) summoning fifty additional jurors when the math made it clear that the original 150 venire panel was not going to be sufficient, there simply are not sufficient numbers to empanel a jury in this case.

The Government regretfully and respectfully submits that the public risk is too high to require those jurors to return to the courthouse given that there is little likelihood that a jury can be empaneled from this jury pool.  From the original 150 Questionnaires, there are no more than 18 jurors available for the next phase of the jury selection process (which includes additional challenges for cause, followed by peremptory challenges).  Even assuming the 50 jurors who were recently summoned have the same ratio of challenges for cause[6], there would only be 24 people in the panel – seven less than the bare minimum needed.

One final note regarding the remaining members of the jury panel: the parties have not yet been provided the information that would allow comment on whether the remaining jurors represent a fair cross section of the community. *See* Taylor v. Louisiana, 419 U.S. 522, 530-31 (1975).  However, the Government is concerned, based on the Court's identification of this possible issue during today's proceedings and public knowledge that the coronavirus has had a

---

[6] An assumption that is unlikely considering (1) the rise in coronavirus infection rates in Connecticut since the original questionnaire was mailed on October 8, 2020.  See generally https://portal.ct.gov/coronavirus (reporting the daily change in new positive COVID-19 cases to be +1524  on November 10, 2020) and https://web.archive.org (reporting the daily change in new positive COVID-19 cases to be++213 on October 15, 2020); and (2) the challenges with jurors being able to be present for a week of trial with short notice.

disproportionate risk of serious consequences on individuals in racial minorities and the elderly.

### B.  The Time Should Be Excluded Under 18 U.S.C § 3161(h)(7) Because Public Safety Necessitates a Continuance

The issues presented by the devastating impact of the novel coronavirus ("COVID-19") pandemic to both society in general and the litigation of criminal matters justifies a continuance. The United States District Court for the District of Connecticut has been closely monitoring the outbreak of COVID-19, as well as the developing guidance from the CDC about the virus.

In order to stop the exponential spread of the disease[7] in Connecticut, on November 5, 2020, Connecticut Governor Ned Lamont issued Executive Order No. 9K which, among other restrictions, returned Connecticut to Phase 2.1 (effective November 6, 2020) limiting private gatherings both indoors and outdoors to 10 people.  *See* https:// portal.ct.gov; *see also*

https://www.ctpost.com/news/coronavirus/article/Lamont-restricts-gatherings-to-10-people-as-COVID-15705128.php **(last visited on November 10, 2020)**

This Court previously directed the parties to two resources regarding COVID-19 information.  [Docket No. 236].  The first resource is the http:/portal.ct.gov/Coronavirus/COVID-19-Data-Tracker.  Today, that website

---

[7]  "[N]ew daily cases of COVID-19 passed 135,000 for the first time, as the raging pandemic continued to shatter record after record and strain medical facilities." https://www.nytimes.com/live/2020/11/10/world/covid-19-coronavirus-live-updates?name=styln-coronavirus&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=e77dbd51-23cc-11eb-a6c9-7be552aecf96&variant=undefined **(last visited on November 10, 2020)**

listed the daily test positivity as 6.74% [last updated on November 10, 2020 at 4:00 p.m.].

The other resource, **https://covid19risk.biosci.gatech.edu** provides risk level assessments based on certain ascertainment bias and group size.   As of this afternoon, Hartford county had the following risk assessment:

| Bias | Group Size | Risk Assessment |
|------|-----------|-----------------|
| 5 | 25 | 25% |
| 5 | 50 | 44% |
| 10 | 25 | 44% |
| 10 | 50 | 69% |

If even one individual, whether it be a juror, witness, counsel, or court staff member, tests positive in the middle of a trial, or even displays symptoms associated with COVID-19, a mistrial could occur, thus thwarting Ms. Foley's goal of having a resolution to her criminal case.

To be clear, the Government is not opposed to the Court resuming trials. In fact, the Government is currently preparing for other trials that are set to begin in December of 2020 and January 2021. Rather, it is the particular risks and complications associated with this case that make it ill-suited to be one of the first trials.

Taking into account the above guidance, all trials will present some risk. However, despite all of the efforts by this Court to use a jury questionnaire to

identify those jurors who would not be suitable for jury selection (due to health restrictions, conflicts in schedules and/or bias – especially bias due to the nature of the charges),  the response rate was inadequate to empanel a jury.  The Government respectfully submits that convening a jury for a trial of this nature during a re-surging pandemic is unchartered territory.  Response rates were extraordinarily low and, of those that responded, a significantly high number of jurors necessitated challenges for cause – most of which the parties agreed were appropriate.  These circumstances distinguish this case from other matters which may be better suited for an in-person trial in the coming months.

After today's hearing, the Government made efforts to seek information from other jurisdictions regarding whether they have successfully been able to seat jurors.  The answer is a mixed bag.  It is true that there have been child exploitation trials during the pandemic in several jurisdictions, including in nearby Springfield, Massachusetts which held a jury trial in a production of child pornography case in early October.  *United States v. Jonathan Monson,* 18CR30015(MGM).  According to the AUSA involved in that trial, they needed 34 qualified jurors to allow for their full peremptory challenges.  To reach that number, they utilized a juror questionnaire and then had seventy to eighty jurors appear over two full-days for the in-person voir dire.  The outcome of that case suggests that, with a larger venire panel and enough lead time, this case may be able to safely proceed to trial in the near future.

However, there have also been catastrophic results when trials of this nature proceeded without adequate test cases. The Government is aware of a

child sex-trafficking trial that began in the Eastern District of Kentucky on August 31, 2020. The trial lasted two weeks. Despite the fact that all persons in the courtroom, except for the defendant, wore masks, all members of the prosecution team, as well as several agents, witnesses, and U.S. Marshals contracted COVID-19 at the trial. The Honorable Judge Royce Lamberth (District of Columbia) cited this case in an Order continuing a trial in his, which was scheduled to proceed to trial on November 30, 2020. *See United States v. Lewis*, 1:19-cr-00307 (RCL)(Dkt No. 97, October 29, 2020).

Even if a jury could be empaneled, the current COVID-19 rates (as well as experience with this case) suggest that it is still extremely likely that something will go wrong to prevent the trial from reaching deliberations and a verdict. As noted, we have already had one potential juror drop out of the panel due to a COVID-19 diagnosis and one CSO test positive necessitating the court's closure. Given all of the increased risk due to the many factors discussed above, and the Court's  expressed need to only seat one juror due to the safety precautions of the courtroom, there is a reasonable chance of either a delay or, depending on who gets sick and how many people are affected, a mistrial.

In order to ensure the most likely success for all trials, the first trials attempted in this district should involve local witnesses to ensure flexibility for their appearance, should not involve a child exploitation offense that would increase the number of jurors needed for voir dire, and be projected to last for a short duration to limit exposure for everyone.

**C.**   **A Continuance Will Not Violate the Defendant's Sixth Amendment or Statutory Right to a Speedy Trial.**

The Court's findings on the four-pronged analysis under *Barker v. Wingo*, 92 S. Ct. 2182 (1972) contained the Order, still apply in full force.  The Court's analysis of the first three *Barker* considerations – the length of the delay, reasons for the delay, and the defendant's assertion of her speedy trial rights --  need not change to account for any additional continuances.  In other words, those circumstances are no different now than they were at the time the Court ruled on the defendant's motion to dismiss.  Particularly with respect to the reasons for the delay, there can be no blame placed on either the Court or the Government for the need for an additional continuance.  As set forth above, the delay is the direct result of the extraordinary, unpredictable, and devastating consequences of the pandemic.

But the Court's analysis on the fourth prong – whether the defendant has suffered any prejudice as a result of the delay – bears repeating.  *Barker* requires that a speedy trial analysis include an assessment of whether the defendant has suffered any prejudice as a result of the delay.  To that end, *Barker* recognizes three concerns: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Barker* at 2193.  As to the first concern, the Court correctly found that the defendant has not been prejudiced by her placement at a halfway house because she "requested to be placed there on a pre-trial basis as an accommodation for her indigency."  Docket No. 248 at 24.  As to the second concern, the Court found that the defendant made only a generalized claim that

16

she has experienced anxiety and concern as a result of the pending criminal charges. *Id.* As to the third concern, the Court found that the defendant "has not articulated any basis as to how she would be prejudiced by the delay at trial" and that she "does not contend that her ability to present evidence in her defense was impaired by the delay." *Id.*

For the same reasons, the continuance requested by the Government would not cause the defendant any prejudice. The defendant continues to reside at the same halfway house and, to the Government's knowledge, will continue to reside there until the resolution of this matter (moreover, if she wished to locate alternative housing that was appropriate given the conditions of her release, she has always been able to file a motion requesting approval). While it is reasonable to assume that the defendant, like most defendants, continues to experience generalized anxiety and concern about the pending criminal charges[8], there is nothing to suggest that a continuance will increase those feelings in a way that will change the prejudice analysis.

Finally, and importantly, the defense of this case will not be impaired by any additional delay. The specifics of the Government's case, including its witnesses, exhibits, and potential pretrial and trial motions, have been known to the defendant since the parties first prepared for trial one year ago. When the

---

[8] To the extent the defendant suggests that she is prejudiced by the delay because it also may delay her upcoming trial regarding the termination of her parental rights, the Government respectfully submits that the family court's case can proceed regardless of the outcome of this case. Upon information and belief, and based on discussions with the minor victims' attorney, the termination of parental rights trial is scheduled to begin in January and is unlikely to be delayed due to the pandemic because they are able to have trials through VTC.

parties selected a jury in January 2020, the defendant again received copies of all Government exhibits, information related to each Government witness, and had extensive information relative to the Government's theory of proof and presentation of evidence.   The defendant has not (and cannot) claim that any delay has resulted in the loss of favorable witnesses or other favorable evidence. To the contrary, the defendant has repeatedly represented that she does not intend to call any witnesses at trial.  Thus, she has not been prejudiced, and will not be prejudiced, by a continuance of jury selection.

It is worth noting that, for the first time since March, there is no longer a Standing Order calling for the pandemic-related suspension of all criminal jury trials in this District.  That fact, however, should not weigh against this Court's determination of whether a continuance is appropriate.  As this Court noted in its September 2, 2020 order continuing jury selection,

> the interests of justice served by continuing jury selection to 11/10/20 outweigh the interest of the public and the Defendant in a speedy trial because of the public health risks associated with summoning large groups of prospective jurors who would be required to sit in close proximity to each other during jury selection, and if selected, during trial and deliberations; the reduced ability to obtain an adequate spectrum of prospective jurors due to the public's perceptions of the risks associated with jury service, and the effect of public health recommendations on the availability of counsel and Court staff to be present in the courtroom.

Docket No. 234.  The efforts to select a jury in this matter over the last several months have revealed an unfortunate reality: The Court's September speedy trial findings are no less applicable today than they were more than two months ago.  The low response rate – and the frequency with which responsive prospective jurors cited the pandemic as a barrier to their service on this jury –

brought into clear focus the "public's perceptions of the risks associated the jury service."  The recent increase in positive cases in Connecticut does little to assuage the perception of risk and undoubtedly contributed to the Court's inability to obtain an adequate spectrum of prospective jurors.

The events of the last few days have also painted a grave picture of the actual – and not just possible – risks of seating a jury at this time.  As noted above, since yesterday, both a prospective juror and a Court Security Officer in the Hartford courthouse have tested positive for COVID-19.  These unfortunate diagnoses have been disruptive to the jury selection process: the parties are left with one less potential juror in an already slim pool, and courthouse operations have been significantly hindered by both the closing of the building and the inevitable need for other essential court staff to quarantine.  These types of disruptions will likely continue until significant progress is made in abating and preventing the spread of COVID-19.

Even considering these challenges, however, the Government believes that the Court can safely and efficiently conduct the defendant's trial at reasonable date in the future.  The Government agrees with the Court's earlier suggestion that it summon a much larger pool of venirepersons from which to select a jury. It appears that this can be accomplished, but that additional time is required in order to compile the random selection of individuals, mail them the questionnaires, and receive responses for the parties' and the Court's review.

Any additional time required to do so does not amount to an unreasonable delay and would not violate the defendant's constitutional right to a speedy trial.[9]

**CONCLUSION**

Based on the foregoing, the Government requests this Court postpone the jury trial and set a new trial date for as soon as practicable, with appreciation for the Court's schedule and the need for time to empanel a new, larger, venire panel and receive juror responses to a questionnaire.  The Government request the Court to exclude the time of this continuance under 18 U.S.C. § 3161(h)(7).

<div style="margin-left:40%">

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*Nancy V. Gifford*

NANCY V. GIFFORD
ASSISTANT UNITED STATES ATTORNEY
450 Main Street
Hartford, CT 06106
Tel: (860) 947-1101
Federal Bar No. ct16324

MARIA DEL PILAR GONZALEZ
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct30716
157 Church Street
New Haven, CT
(203) 821-3700

</div>

---

[9] The Court noted today and on earlier occasions that it has several other criminal jury trials scheduled through the middle of 2021.  To the extent that the District's prioritization of cases suggests that Ms. Foley's case should proceed sooner, rather than later, than other defendants' trials, the Government notes that this matter could be transferred to another district judge who may have an earlier time slot in which to conduct this trial.

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

/s/

**NANCY V. GIFFORD**

**ASSISTANT U.S. ATTORNEY**